# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-01106-SCT

*CRAIG ALLEN*

*v.*

*NATIONAL RAILROAD PASSENGER CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/27/2005 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | TERESA EARLEY HARVEY |
| | SAMUEL JAY ROSENTHAL |
| ATTORNEYS FOR APPELLEE: | KENNETH DAVID McLEAN |
| | GEORGE H. RITTER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 07/27/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., CARLSON AND GRAVES, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    Because the trial court dismissed his tort lawsuit for damages because of his repeated failure to disclose in discovery his prior back injury and workers' compensation claim, the plaintiff has appealed to us. Finding no error by the trial court, we affirm its judgment of dismissal.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. Craig Allen was an assistant conductor for the National Railroad Passenger Corporation (Amtrak). In 2001, Allen suffered a spinal injury while unloading baggage on the job in Jackson, and he thereafter sued Amtrak pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 et seq., in the Circuit Court for the First Judicial District of Hinds County. During discovery, Amtrak asked Allen if he had ever suffered a similar injury or filed a workers' compensation claim. In separate responses to Amtrak's inquiries propounded via interrogatories, requests for production of documents, and deposition questions, Allen denied that he had ever suffered a previous back injury or filed a workers' compensation claim.

¶3. Later, after the close of discovery, Amtrak learned that Allen not only had in fact previously suffered disc injuries to his lower back in the same location, but that Allen had also filed a claim and received a workers' compensation award for that earlier injury. This earlier injury had occurred in 1993 when Allen, a former police officer, was struck by a car while directing traffic. Because of Allen's false responses, given under oath, Amtrak filed for sanctions in the form of a motion to dismiss under the provisions of Miss. R. Civ. P. 37. Allen responded with a sworn affidavit, stating that the incident and injury were so minor, he had "honestly completely" forgotten about them. At the hearing on the Rule 37 motion, Allen's attorney noted that Allen was present if the trial judge needed to personally question him, but the judge found such interrogation unnecessary. The trial court found Allen's omission to be willful conduct which prejudiced Amtrak and found the deterrent value of Rule 37 could not

2

be achieved by a less harsh result than that of dismissal. The trial court thus granted Amtrak's motion and dismissed Allen's case with prejudice.

¶4. On appeal to us, Allen complains that (1) there was insufficient evidence of willfulness or bad faith on his part to justify a dismissal of his lawsuit; (2) the FELA provides a clear preference for credibility determinations to be made by the fact-finder (jury); and, (3) Allen's due process rights were violated when he was not permitted to testify at the hearing before the trial judge.

## DISCUSSION

### I.     EVIDENCE OF BAD FAITH AND WILLFULNESS

¶5. Reviewing another case with similar facts concerning discovery abuse resulting in dismissal with prejudice, we stated:

> The decision to impose sanctions for discovery abuse is vested in the trial court's discretion. The provisions for imposing sanctions are designed to give the court great latitude. The power to dismiss is inherent in any court of law or equity, being a means necessary to orderly expedition of justice and the court's control of its own docket. Nevertheless, the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances.
>
> Such dismissals by the trial court are reviewed under an abuse of discretion standard. When this Court reviews a decision that is within the trial court's discretion, it first asks if the court below applied the correct legal standard. If the trial court applied the right standard, then this Court considers whether the decision was one of several reasonable ones which could have been made.

*Pierce v. Heritage Props., Inc.*, 688 So.2d 1385, 1388 (Miss. 1997) (internal citations omitted). "This Court will affirm a trial court's decision unless there is a 'definite and firm

3

conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.'" *Id.* (quoting *Cooper v. State Farm Fire & Cas. Co.*, 568 So.2d 687, 692 (Miss. 1990)). One certainty is that we are to give great deference in these cases to the trial judge's exercise of discretion. "Trial courts have considerable discretion in discovery matters and decisions will not be overturned unless there is an abuse of discretion." *Scoggins v. Ellzey Beverages, Inc.*, 743 So.2d 990, 995 (Miss. 1999); (quoting *Robert v. Colson*, 729 So.2d 1243, 1245 (Miss. 1999)).

¶6. Allen argues on appeal, and argued at the trial court hearing on the matter, that his conduct was not willful, but rather that he merely forgot about his earlier injury and workers' compensation claim because this prior injury did not cause him much pain, did not cause him a significant loss of work, and did not diminish his ability to earn an income. Allen claims that the trial court abused its discretion in dismissing his lawsuit due to perceived discovery violations, while, on the other hand, Amtrak argues that under Miss. R. Civ. P. 37 and the court's inherent power to control its own docket, the trial court did not abuse its discretion in granting the motion to dismiss and that Allen's due process argument is procedurally barred because it was not raised in the trial court.

¶7. In addressing the issue of whether he willfully and in bad faith violated the discovery rules by not disclosing certain information, Allen does not argue that he actually disclosed all requested information to Amtrak, nor does he argue that his 1993 injury did not occur. In fact, Allen admits to the earlier injury and also to missing work and receiving worker's

4

compensation awards for the earlier injury. Allen also admits that he failed to disclose any information in his discovery responses pertaining to the earlier injury. However, Allen argues that the record does not establish that his omissions were willful. Instead, Allen asserts that he innocently forgot about the incident. Because the trial judge dismissed his case with prejudice based on findings of bad faith and willfulness, Allen argues essentially that the punishment did not fit the crime and that other measures were available to the trial court to deal with what it found to be discovery violations. Amtrak argues that the trial court did not abuse its discretion with regard to this issue because the testimony and discovery responses from Allen were patently false and misleading and the result of willfulness and bad faith.

¶8.     This Court has adopted the Fifth Circuit's four-part test for determining if a trial court, in dismissing a case with prejudice under Rule 37, has abused its discretion.[1]

> First, dismissal is authorized only when the failure to comply with the court's order results from willfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situation (sic) where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

*Pierce*, 688 So.2d at 1389 (quoting *Batson v. Neal Spelce Assocs.*, 765 F.2d 511, 514 (5th Cir. 1985) (internal citations omitted)). This Court found in *Pierce* that "the most severe sanctions provided by statute or rule must be available to a trial court in appropriate cases, not just to

[1]Rule 37(b) of the Federal Rules of Civil Procedure and Rule 37(b) of the Mississippi Rules of Civil Procedure are virtually identical.

penalize those whose conduct may warrant such a sanction, but to deter those who might be tempted to engage in such conduct in the absence of a deterrent." *Id.* (relying on *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976)).

¶9. In granting the motion to dismiss, the trial court in this case relied on the *Batson* factors adopted by this Court in *Pierce* and found that all four factors had been satisfied and that the omission was willful conduct which caused the defendant prejudice. We review this four-part finding today looking only for an abuse of discretion by the trial judge.

¶10. Each party's version of the facts in this case naturally differs. Amtrak argues that the previous accident was significant and that Allen's failure to disclose it was deceit. Allen argues that the previous accident was not major and that he simply forgot about it during discovery because it was so minor. The information Amtrak obtained after the close of discovery revealed that, as a result of the 1993 accident, Allen had suffered a similar injury in the exact same spinal location (at vertebrae L4-L5 and at the L5-S1 joint) where his injury giving rise to this suit occurred. Allen was working as a police officer at the time and was struck by a car while directing traffic. Amtrak also learned that Allen had filed a claim with, and received an award from, the Arkansas Workers' Compensation Commission. Amtrak discovered medical records proving that, in 2000, Allen told his family physician about the 1993 incident. Amtrak pointed out that these medical records contradicted Allen's claim that the incident was insignificant because Allen told a doctor he quit the police force as a result

6

of the severity of the injury. Amtrak also argues that Allen is unlikely to have forgotten something as significant as this 1993 accident when he was able to remember other seemingly smaller details about his work experience. Allen claimed in an affidavit that the incident was nothing more than a "minor traffic accident," that he missed very little work, that any discomfort subsided within a few weeks, and that he "honestly forgot" about the accident during discovery because it was so insignificant. Allen also claimed that he did not recall filing for workers' compensation benefits in 1993 and that he left the police force shortly after the accident. Allen points out that about five weeks after the 1993 accident, he was released by doctor who said he sustained no impairment. Allen's counsel admitted it was difficult to explain Allen's 2000 disclosure of the 1993 accident to his family physician. Allen's attorney, however, characterized it as a credibility issue that should be preserved for the jury.

¶11. During discovery, Allen had multiple opportunities to report the 1993 accident to Amtrak, but never did. In interrogatories numbered 6, 8, 11, and 14, Amtrak asked Allen to disclose whether he had ever suffered a similar back injury, whether he had ever undergone similar back treatment during his lifetime, whether he had ever filed a claim or lawsuit against a former employer, and whether he had ever received workers' compensation awards. In each of his answers to these interrogatories, Allen failed to disclose the 1993 incident. In request number 5 of the request for production of documents, Amtrak specifically asked for all documents pertaining to medical treatment of Allen's back that had ever occurred in his lifetime. Allen responded by attaching medical records which excluded any documentation of the 1993 incident. When directly asked during his deposition, Allen denied ever having filed

7

a workers' compensation claim, ever having been involved in a car accident with the exception of an unrelated mid-1980s accident, and ever having received other medical treatment for his back.

¶12.    *Pierce* involved a plaintiff suing for personal injury when a ceiling fan fell on her while she was in bed. 688 So.2d at 1387. The plaintiff in that case repeatedly denied that anyone was with her at the time of the injury, instead insisting that she was alone. *Id.* Her reason for lying was that she did not want her parents to know that she had a male companion at her apartment at the time of the accident. *Id.* at 1388. The trial court dismissed the case with prejudice, and this Court affirmed, after finding that "the trial court's sanction against Pierce was warranted to protect the integrity of the judicial process due to Pierce's abuse of the discovery process and presentation of false testimony." *Id.* at 1387. We found Pierce's conduct of willfully concealing the fact that another person was present at the time of the injury constituted bad faith. *Id.* at 1390. We also held that there was no requirement of substantial prejudice to the defense by the absence of evidence. *Id.* at 1391. Finding no abuse of discretion, this Court affirmed the trial court's dismissal. *Id.* at 1392.

¶13.    In *Scoggins*, we also affirmed a trial court's dismissal under Rule 37, finding the plaintiff to have repeatedly misrepresented her medical history which coincidentally involved injury to the plaintiff's lumbar spine. 743 So.2d at 995. The trial court recognized its duty to impose the least severe sanction available and found no other sanction to be available that would accomplish the intended purpose in that case. *Id.* at 993. The plaintiff argued memory

8

loss in an effort to explain away her failure to give completely accurate responses to discovery requests. *Id.* at 995. Relying on *Pierce*, this Court determined that the trial court did not abuse its discretion in finding that the plaintiff's failure to comply with discovery requests was willful and that the plaintiff's attempts to explain her misconduct were not credible or supported by substantial evidence in the record. *Id.* at 996. Therefore, this Court affirmed the dismissal by the trial court. *Id.*

¶14. In *Salts v. Gulf Nat. Life Ins. Co.*, 872 So.2d 667 (Miss. 2004), a plurality of this Court relied on *Pierce* and *Scoggins* finding that dismissal was warranted because of discovery violations. Equally divided, this Court affirmed the trial court's dismissal of the case. *Id.* at 675. The plurality found a plaintiff's failure to comply with a court order to be willful conduct. *Id.* at 674. It further found that the defendants' trial preparation was substantially prejudiced and there was no error in the trial court's decision to dismiss the action under Rule 37. *Id.* at 674. "To hold otherwise would render . . . the rule meaningless and one which we should simply judicially abrogate if it is not going to be enforced. A rule which is not enforced is no rule at all." *Id.* Even the dissenting opinion in *Salts*, disagreeing with the holding on the particular facts in that case, acknowledged that the extreme sanction of dismissal with prejudice was appropriate in *Pierce* and *Scoggins* because of misrepresentation of fact and the presentation of false testimony. *Id.* at 675 (Dickinson, J., dissenting).

¶15. This Court has reversed a trial court's dismissal of a case for discovery violations finding the dismissal to be an abuse of discretion. *White v. White*, 509 So.2d 205 (Miss.

9

1987). In *White*, the trial judge made no determination of willfulness or bad faith and this Court was presented with no findings on the *Pierce* and *Batson* considerations. *Id.* at 208-09. Additionally, other sanctions were available because the discovery offense in that case was a failure to comply with discovery requests in a timely manner. *Id.* at 209. *White* illustrates when dismissal is inappropriate, but it is clearly factually distinguishable from the case at bar. Here, the trial judge made findings of bad faith and willfulness and did so according to the *Batson/Pierce* factors, and the sanctions were appropriate because of misrepresentation of fact and the presentation of false testimony, akin to our holdings in *Pierce* and *Scoggins*.

¶16.     In *Wood v. Biloxi Public School District*, 757 So.2d 190, 191 (Miss. 2000), we also reversed a trial court's dismissal for discovery violations, finding that the case was distinguishable from *Scoggins* and *Pierce*, in that the lower court's ruling was based upon "a single alleged untruthful response in an interrogatory." In *Wood*, this Court determined that it was not established, as it was in today's case, that the plaintiff knowingly made a false statement or that he submitted a pattern of false responses. *Id.* Going further, we found that, other, more appropriate sanctions should have been considered by the trial court because of the facts in that case. *Id.* at 191-92. Like *White*, *Wood* is not applicable to today's facts and we clearly distinguish *Wood* today just as the plurality did in *Salts*, 872 So.2d at 673-74. The trial court in today's case found that Allen knowingly made false statements when it determined his actions were the result of willfulness and bad faith. We are not faced today with a single untruthful response, but repeated opportunities to disclose the earlier accident

10

and repeated failures to do so. Looking at what specific details of his life Allen was able to remember easily, coupled with the 2000 medical records proving Allen told his doctor about the accident, the trial judge found that a pattern most definitely existed. Without question, on today's record the trial judge did not abuse his discretion in making his ruling.

¶17. Allen attempts to distinguish *Pierce* and *Scoggins* by pointing out that neither case is governed by the FELA, and by attempting to factually distinguish those cases. Allen argues that *Pierce* involved a plaintiff who knowingly and willfully perjured herself and that *Scoggins* involved plain and obvious evidence of bad faith, both being consequently unlike his case. In *Scoggins*, where the plaintiff's argument of memory loss was put forward as a defense, comparable to Allen's defense of forgetfulness here, we agreed with the trial court's finding that the plaintiff witness was not credible because she could remember details of other aspects of her life and only had claimed a loss of memory concerning the medical history she failed to disclose. 743 So.2d at 995. Further, we reasoned that an invasive and painful procedure involving the lumbar spine there, comparable to the lumbar injury here, would be difficult to easily forget. *Id.*

¶18. We find it to be unusual that Allen would have forgotten about a back injury which occurred in the same place on his spine eight years earlier, which resulted in his missing work, and for which he was awarded workers' compensation benefits. Allen's argument that an accident occurring eight years earlier was far enough away in time to have been easily forgotten weakens when we consider the undisputed fact that Allen told his family physician

11

about the 1993 incident in 2000, only one year before the injury giving rise to this litigation, and seven years after the earlier injury occurred. Allen's 2000 revelation to his family physician about the 1993 accident was documented in a medical report which Allen failed to produce in response to Amtrak's discovery request. Assuming arguendo that Allen innocently forgot about his 1993 accident, this "innocent mistake" was compounded by his failure to produce this medical report in discovery. Allen also argues that the judge ignored certain rebuttal evidence, namely Allen's own affidavit. This one-page affidavit did nothing more than state Allen's defense that he innocently forgot about the earlier injury. This affidavit, together with the information Amtrak obtained after discovery, constituted the evidence the trial judge had to review in making his ruling. We are not to sit in place of the trial judge in this case. We are only to review the judgment of the court below for an abuse of discretion. Reviewing the record before us, we find that the trial court did not abuse its discretion in finding that a Rule 37 dismissal here was appropriate pursuant to *Pierce* and *Batson*. The trial court found that Allen's failure to disclose the 1993 incident resulted from willfulness or bad faith, and not from the inability to comply. *Pierce*, 688 So.2d at 1389. The trial court found that the deterrent value of Rule 37 could not be substantially achieved by the use of less drastic sanctions here and that dismissal was thus proper. *Id.* Additionally, Amtrak's preparation for trial was substantially prejudiced, though substantial prejudice is not necessary under this test, and there is no evidence to even suggest that there was any neglect plainly attributable to Allen's attorney, or grounded in Allen's confusion or sincere misunderstanding of the court's

12

orders. *Id.* *See also* ***Amiker v. Drugs For Less, Inc.***, 796 So.2d 942, 951 (Miss. 2000); ***Wood ex rel. Wood v. Biloxi Pub. Sch. Dist.***, 757 So.2d 190, 193 (Miss. 2000).

¶19.    We afford the trial judge considerable, though not unfettered, discretion in cases such as the one before us today.   In order to reverse the trial court today, this Court would have to hold a definite and firm conviction that the trial court committed a clear error of judgment and abuse of discretion in the conclusion it reached upon weighing each of the relevant factors set out in *Pierce*.   This we cannot do.   The trial court certainly weighed the relevant factors in reaching its conclusion and no evidence exists in the record to support a finding of a clear error of judgment or abuse of by the trial court.   We thus find this issue to be without merit.

## II.    FELA

¶20.    Allen's second assignment of error is that the trial court should have allowed credibility determinations to be made by the jury inasmuch as FELA states a preference for the fact-finder to do so.   Allen asserts that because no evidence existed in the record to prove willfulness, such as a signature on the workers' compensation forms, the trial court's determination was simply one of credibility.   Allen's position is that the trial court, in taking away the credibility determination from the jury, deprived him of his right to a jury trial under FELA, which encourages the protection of railroad workers through litigation.   Allen argues that the trial judge had no evidence to support his determination that the actions were intentional or willful, but rather only inferred it against Allen.   The debate that ensues between the two sides in this case raises the query of when a procedural rule is essentially substantive because of its effect. Allen also cites other authority, which we find to be marginally relevant today, for the

13

proposition that the evidentiary threshold is quite low for a FELA case to proceed to a jury. This may be so, but this fact is simply not dispositive of the question before us today. The trial judge did not consider the evidence to make a substantive determination of whether sufficient evidence existed to present a jury question of causation, but rather the trial judge examined evidence of Allen's discovery violations to make a procedural determination whether his pre-trial conduct was willful. Finally, Allen states that depriving FELA plaintiffs of the benefit of jury trials even in close or doubtful cases is to "take away a goodly portion of the relief . . . Congress has afforded them" under the statute. *Bailey v. Cent. Vt. Ry.*, 319 U.S. 350, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444 (1943). This is also no doubt true, but does not describe the case before us as we are not considering whether enough evidence was presented in a "close" case for a jury to consider it, as we would, for example, in reviewing a trial court's grant of a directed verdict. Although the harsh reality is that dismissal will forever deprive Allen of the opportunity to seek relief for the 2001 accident which is the subject of today's appeal, that is precisely the deterrent effect of Rule 37 sanctions.

¶21. In making its ruling, the trial court relied on the following holdings from *Scoggins* and *Pierce*: "'A trial is a proceeding designed to be a search for the truth.' When a party attempts to thwart such a search, the courts are obligated to ensure that such efforts are not only cut short, but that the penalty will be sufficiently severe to dissuade others from following suit." *Scoggins*, 743 So.2d at 994-95 (quoting *Sims v. ANR Freight System, Inc.*, 77 F.3d 846, 849 (5th Cir. 1996)). "The power to dismiss is inherent in any court of law or equity, being a means

14

necessary to orderly expedition of justice and the court's control of its own docket." *Pierce*, 688 So.2d at 1388 (citing *Palmer v. Biloxi Reg'l Med. Ctr.*, 564 So.2d 1346, 1367 (Miss. 1990)). Additionally, Rule 37 specifically allows for dismissal as a sanction in certain circumstances. Miss. R. Civ. P. 37. Conceding that FELA does govern this claim, Amtrak points out Allen's failure to cite relevant authority for his propositions and argues that allowing the jury to decide issues pertaining to procedure, discovery, abuse, and pre-trial misconduct, would divest the trial court of its own inherent right to govern procedural matters. With the above discussion still in mind, we need not re-examine the sufficiency of the evidence of Allen's discovery violations. Allen's concerns under this second issue are not entirely different from his concerns under the first issue discussed above, thus our disposition here is the same. This Court has stated its concern with virtually allowing a plaintiff "to get away with lying under oath without a meaningful penalty," when that plaintiff has willfully failed to comply with discovery requests. *Pierce*, 688 So.2d at 1391.

¶22. Returning briefly to the substantive/procedural discussion raised in the briefs, this Court has noted that when FELA cases are brought in state court, federal law governs the substantive rights of the parties. *Illinois Cent. R.R. v. Gandy*, 750 So.2d 527, 534 (Miss. 1999) (citing *Southwestern Ry. v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985) (FELA actions in state courts are subject to state procedural rules)). The courts of this State may properly utilize the Mississippi procedural rules in hearing federal law claims, but look to the federal law at issue to adjudicate matters of substantive rights of the

15

parties. *King v. Grand Casinos of Miss., Inc.-Gulfport*, 697 So.2d 439, 442 (Miss. 1997) (a maritime law claim). The trial judge in this case did nothing more than apply Mississippi procedural law to a dismissal under Rule 37. That Allen's substantive rights were affected when his case was dismissed is without doubt, but such is the nature and purpose of sanctions for discovery violations and hindering the discovery of truth in a lawsuit. To do anything less would not effectively dissuade others from doing the same. Again, the trial court did not abuse its discretion in finding that a less harsh penalty would not achieve the same results. As we stated above, the trial judge in this case was not making a determination of Allen's substantive rights under his claim, but rather a procedural determination of whether his pre-trial conduct was willful and warranted dismissal. As we have previously stated, "[o]ur trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts..." *Bowie v. Montfort Jones Mem'l Hosp.*, 861 So.2d 1037, 1042 (Miss. 2003). This proper exercise of judicial discretion includes, in appropriate cases, the right to dismiss a case due to discovery violations. *Id.* at 1042-43. For these reasons, we find this issue is without merit.

### III. DUE PROCESS

¶23. Finally, Allen asserts that the trial court's failure to allow him to testify on his own behalf at the hearing on the Rule 37 motion violated his due process rights. Allen characterizes the trial court's action as a refusal to allow him to be heard, or a denial of an opportunity to testify in his own behalf, which equates to a violation of his due process rights. The record reveals the following colloquy between Allen's counsel and the trial court:

16

I'm prepared to go forward with the argument. I've also brought Mr. Allen to the courtroom if Your Honor thinks that it might be worth it to have him on the stand to actually hear question and answer and to see for yourself Mr. Allen's credibility.

BY THE COURT: The Court on this issue really will base its decision on what is already before the Court.

In reality, Allen's counsel merely informed the trial court that Allen was present to testify if the court felt his live testimony would be helpful. The trial court did not find it necessary to hear from Allen in order to rule in the case. Once the trial court announced that it would not hear from Allen by way of sworn testimony from the witness stand, neither Allen nor his counsel raised a due process violation for the trial court to consider. Likewise, the order and opinion from which this appeal was taken, as specified in the notice of appeal, did not address this issue. *See* M.R.A.P. 3(c). Failure to preserve this issue for appeal purposes renders this issue procedurally barred. ***Corey v. Skelton***, 834 So.2d 681, 686 (Miss. 2003); ***Barnes v. Singing River Hosp. Sys.***, 733 So.2d 199, 202 (Miss. 1999); ***Educational Placement Servs. v. Wilson***, 487 So.2d 1316, 1320 (Miss. 1986). Procedural bar notwithstanding, we will nonetheless briefly discuss this issue on its merits.

¶24. Allen cites various authorities for the proposition that due process demands that Allen be afforded a hearing on the merits of his case. *See **Logan v. Zimmerman Brush Co.***, 455 U.S. 422, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982); ***Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers***, 357 U.S. 197, 78 S. Ct. 1087, 2 L. Ed. 2d 1255 (1958); ***Hammond Packing Co. v. Arkansas***, 212 U.S. 322, 29 S. Ct. 370,

17

53 L. Ed. 530 (1909); *McDaniel v. Ritter*, 556 So.2d 303 (Miss. 1989). However, Allen also cites the Tenth Circuit for the rule that, "[b]ecause a default judgment is such a harsh sanction, due process requires that 'failure' [to comply with court orders or to attend depositions and serve answers to interrogatories] is a sufficient ground only when it is the result of 'willfulness, bad faith, or [some] fault of petitioner' rather than inability to comply." *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987) (quoting *Nat'l Hockey League*, 427 U.S. at 640). Amtrak argues that the due process clauses under the Fifth and Fourteenth Amendments did not require the trial judge in this case to hear live testimony from Allen. We agree. As already discussed, the trial court did in fact make a finding of willfulness and also found that it was not an inability to comply which prevented Allen from complying with discovery requests, but rather an act of bad faith. Further, it is not clear from Allen's argument what exactly it was that the trial court refused to hear. There was no proffer that Allen's live testimony was going to differ from, or add substantially to, his affidavit or his attorney's argument on the motion to dismiss. As we have already concluded, Allen deprived himself of a hearing on the merits by his discovery responses in this case. Allowing him to proceed would have completely diluted the intended effect of Rule 37. All that due process requires in cases of dismissal under Rule 37 is that the trial court make a finding of willfulness or bad faith on the part of the party whose claims were adversely affected, which the trial court in today's case properly did. *See Societe Internationale*, 357 U.S. at 207-08. This issue is without merit.

18

**CONCLUSION**

¶25.    The trial court in today's case did not abuse its discretion in dismissing Craig Allen's case pursuant to Miss. R. Civ. P. 37(b), based on its finding that Allen willfully violated the discovery rules by repeatedly failing to disclose his 1993 back injury and claim during the discovery process.    Therefore, we affirm   the judgment of dismissal entered by the Circuit Court for the First Judicial District of Hinds County.

¶26.    **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.  DIAZ AND EASLEY, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**