797 So.2d 331 (2001)
Alan B. WOODS and Smoky Hollow Foods/Sara Lee Corporation, Appellants,
v.
Peter BURNS, Jr., Appellee.
No. 1999-CA-01771-COA.
Court of Appeals of Mississippi.
April 10, 2001.
*332 Franklin Williams, Attorney for Appellants.
B. Sean Akins, Ripley, Attorney for Appellee.
Before SOUTHWICK, P.J., IRVING, and MYERS, JJ.
IRVING, J., for the Court:
¶ 1. This case arose from an automobile accident in Desoto County where the jury awarded the plaintiff, Peter Burns, Jr., $90,000. The defendants, Alan Woods and his employer, Sara Lee Corporation (collectively *333 referred to as Woods),[1] feeling aggrieved, have effected this appeal asserting the following issues: (1) whether statements made by plaintiff's counsel during closing argument were inappropriate and inflammatory with no relation to any relevant issues, (2) whether the inflammatory statements improperly placed before the jury, issues of settlement and insurance coverage that were not cured by the court, (3) whether plaintiff's complete failure to offer any evidence or proof in support of his claim for loss of future earnings and the absence of any medical proof or testimony that plaintiff suffered a disability resulting in a loss of future earning capacity, requires reversal of the jury verdict as such verdict was based on speculation, (4) whether the verdict was grossly excessive and unsupported by any evidence in light of: (a) the testimony from the treating physicians that plaintiff suffered a minor whiplash injury, (b) the fact that the Plaintiff was returned to work, (c) the fact that the treating physician was unable to testify with a degree of medical certainty on the issue of causation, and (d) the fact that the plaintiff offered no additional evidence or testimony in support of his claim.
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. Burns, fifty-eight at the time of the accident, was driving a truck on United States Highway 78 in Desoto County, Mississippi, when he was struck from the rear by Alan Woods, an employee of Smokey Hollow Foods/Sara Lee Corporation. At the time, Burns was an employee of the Mississippi Department of Transportation (MDOT). Both the plaintiff and the defendant were found to be in the course and scope of their respective employment. The rear-end collision overturned Burn's truck onto the other side of the four lane highway.
¶ 4. Following the accident, Burns was transported to St. Francis Hospital complaining of neck and back pain. He was treated at St. Francis by Dr. Rodney Olinger for a period just short of a year. During his recovery he was also treated for chronic neck pain by Dr. Stephen Gipson, a pain specialist. Dr. Olinger diagnosed Burns with facet pain, muscle damage, trigger point pain, and ligament damage which he labeled as a "whiplashtype injury." Ultimately, Dr. Olinger assigned Burns a permanent impairment rating of six percent to the whole body.
¶ 5. Burns was released to return to work at MDOT with a fifteen pound weight restriction. He continued to work there for approximately six weeks when he finally resigned, complaining that he could no longer fulfill his duties which included, but were not limited to, operating heavy equipment such as a jackhammer.

ANALYSIS OF THE ISSUES PRESENTED

I. Closing Argument Remarks
¶ 6. Woods argues that Burns's counsel made statements during closing argument that were improper and inflammatory. Counsel made the following statement: "This is the only time that this company will be forced to do what it ought to have done to begin with without us coming to court." After a proper and timely objection by defense counsel, the trial judge merely stated that the plaintiff *334 was out of time without ruling on the objection or instructing the jury in any way.
¶ 7. Our supreme court opined in Shell Oil Co. v. Pou, 204 So.2d 155, 157 (Miss. 1967), that "the only legitimate purpose of the [closing] argument of counsel in a jury case is to assist the jurors in evaluating the evidence and in understanding the law and in applying it to the facts." The Shell Oil court explained that "appeals to passion or prejudice are improper and should not be allowed." Id.
¶ 8. Woods argues that defense counsel's statement could have influenced the jurors to infer that there was some type of insurance coverage and/or that the case should have been settled prior to trial. Woods asserts that the statement was a "clear reference to settlement." Further, according to Woods, the statement implies that the appellants acted improperly or that they had failed to do something required by law that they "ought to have done" without being "forced" into court.
¶ 9. Burns denied any intent to refer to settlement or insurance coverage and instead asserted that the statement was an explanation of the purpose of any lawsuit "to force the defendant to pay that which the plaintiff thinks that defendant already owes and should have paid without the necessity of litigation."
¶ 10. In applying the Shell Oil pronouncement, prohibiting comments or references intended to stroke the visceral cords of the jurors, we must examine it in the context that it was made, that is, in light of the evidence and counter argument of counsel. Thus, in order for this court to reverse a judgment based on an improper argument claim, we must first find an "abuse, unjustified denunciation or a statement of fact not shown in the evidence." Brush v. Laurendine, 168 Miss. 7, 13-4, 150 So. 818, 820 (1933). Secondly, we must find that it was probable that this improper argument had a harmful influence on the jury. Id.
¶ 11. After careful review of the statement, taken in the context of which it was offered, we cannot find that allowing it was error, much less reversible error. We acknowledge the possibility that the statement, whether intended to invoke the passions of the jurors or not, did just that, but we are not persuaded that it was probable that the statement had a harmful influence on the jury. Therefore, we are not moved to reverse the judgment on this basis.
¶ 12. Woods also claims that the statement was the equivalent of the "Golden Rule" argument. The "Golden Rule" argument, which has been condemned by our supreme court, asks the jurors to put themselves in the shoes of the lawyer's client. We find no implication of the "Golden Rule" argument in this situation. This argument lacks merit.

2. Proof of Future Earnings and Excessiveness of Verdict
¶ 13. Woods argues that the award for loss of future earnings should be overturned for lack of support. He asserts that Burns did not meet his burden of proving this claim. Woods argues that Burns did not introduce evidence of the amount of earnings Burns received prior to the accident and resulting injury, nor did he introduce evidence of the amount he was capable of obtaining. Therefore, according to Woods, it follows that any award granted by the jury was a result of conjecture and pure speculation and should be overturned.
¶ 14. The courts of Mississippi have consistently held that damage awards must be proved to a reasonable certainty and cannot be based on speculation and conjecture. Flight Line v. Tanksley, 608 *335 So.2d 1149, 1164 (Miss.1992); Hudson v. Farrish Gravel Co., 279 So.2d 630, 635-6 (Miss.1973). However, the Mississippi Supreme Court, since Flight Line, has mandated that "[w]here the existence of damages has been established, the plaintiff will not be denied the damages awarded by a fact finder merely because a measure of speculation and conjecture is required in determining the amount of the damages." TXG Intrastate Pipeline Co. v. Grossnickle, 716 So.2d 991 (¶ 86) (Miss.1997).
¶ 15. Further, it is within the province of the jury to determine the amount of damages to be awarded. Lewis v. Hiatt, 683 So.2d 937, 941 (Miss.1996). The jury sits in the best position to determine the amount of damages warranted in a particular case, if any at all. Therefore, this Court, on appellate review, will only set aside a jury award if it is found to be "so unreasonable in amount as to strike mankind at first blush as beyond all measure, unreasonable in amount and outrageous." Id. Additionally, we must look at the evidence in the light most favorable to the party in whose favor the jury decided, granting that party any favorable inferences that may reasonably be drawn therefrom. Id.
¶ 16. In the case sub judice, Burns presented three witnesses: Dr. Rodney Olinger, Dr. Jere Disney, and himself. From the testimonies of these three individuals, the record reflects the facts as to how the accident took place as well as the injuries that were sustained as a result. Burns enlightened the jury as to his lengthy work history which was limited to that of manual labor. He explained his lack of formal education[2] which forbade a career outside of manual labor. The two physicians presented the jury with evidence that Burns had substantial muscular and skeletal problems and suffered a serious whiplash type neck injury, all related to the accident in question. Further, Dr. Olinger issued Burns a permanent impairment rating of six percent to the body as a whole, once he reached the state of maximum medical improvement. Additionally, Dr. Olinger testified that he advised Burns not to return to his job which included such laborious tasks as operating a jackhammer and loading wheelbarrows. He recommended that Burns seek some other kind of profession. With manual labor ruled out for the most part, this virtually meant Burns would, in all probability, have great difficulty finding suitable employment because of Burns's limited educational level.
¶ 17. Finally, looking at the totality of the evidence presented before the jury, we find ample evidence to support an award for damages of future lost earnings. Rarely do we find a situation where we have a scientific and mathematical formula whereby the jury can simply plug in the missing numbers and await an exact and calculated result to offer as an award for damages. Thus, in any situation we can expect to find some measure of speculation and/or conjecture. However, as opined in TXG Intrastate Pipeline, this alone will not act to deny the plaintiff the award. TXG Intrastate Pipeline, 716 So.2d at 1017 (¶ 86).
¶ 18. Woods also asserts that the verdict of $90,000 was grossly excessive and not supported by the evidence. Woods says the "verdict is not supported by any evidence brought forth by plaintiff." Our review of the record reveals quite the contrary. As we have previously discussed, *336 Burns presented not one, not two, but three witnesses. For the reasons we have already discussed regarding the sufficiency of the evidence, we conclude that the verdict was not grossly excessive. More specifically, we find that the verdict was supported by the evidence presented by Burns, Dr. Olinger and Dr. Disney and was not a product of bias, prejudice and passion as viewed by Woods. Since we do not find that the amount awarded strikes mankind at first blush as beyond all measure, unreasonable and outrageous, we are constrained to affirm the verdict of the jury and judgment of the trial court.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY AWARDING APPELLEE JUDGMENT IN THE AMOUNT OF $90,000 IS AFFIRMED. APPELLEE IS AWARDED STATUTORY PENALTIES AND INTEREST. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, MYERS and CHANDLER, JJ., CONCUR.
NOTES
[1] Alan Woods was also in the course and scope of his employment at the time of the accident.
[2] Actually, he testified that he had a third grade education and was unable to read and write.